IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **SERAH DUNPHY,** on Behalf of Herself | § | |
| and on Behalf of Others Similarly Situated**,** | § | CA No. 4:17-cv-1225 |
| Plaintiffs, | § | |
| v. | § | |
| | § | JURY DEMANDED |
| **PROJECT ARISTOCRAT LIFE** | § | |
| **FOUNDATION, WERUNTEXAS, LLC** | § | |
| **d/b/a MERCY, WE RUN HOU, LLC** | § | |
| **d/b/a ENGINE ROOM, JONATHAN** | § | |
| **REITZELL, STEVEN A. ROGERS,** | § | |
| **JOHN CARAVELLO, TANNER COX,** | § | |
| **AND MOHEED MARTINS, JR.** | § | |
| Defendants. | § | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Serah Dunphy, on behalf of herself and on behalf of others similarly situated, ("Plaintiffs") move for summary judgment on Plaintiffs' claims for unpaid wages in violation of the Fair Labor Standards Act ("FLSA") asserting that there are no genuine issues of material fact as to enterprise coverage under the FLSA and Defendants' status as employers, Plaintiffs' status as Defendants' employees, Defendants' improper tip pooling, improper retention of Plaintiffs' earned tips, failure to pay all wages earned and failure to keep records in accordance with the FLSA. For the reasons asserted herein, Plaintiffs are entitled to judgment as a matter of law:

## I.  INTRODUCTION

Plaintiffs worked as cocktail waitresses and runners at Mercy Nightclub ("Mercy") owned by Defendant We Run Texas, LLC d/b/a Mercy during multiple events that were held at Mercy in February 2017 when the 2017 Professional Football Championship (commonly known as the "Super Bowl") was held in Houston, Texas. During the relevant time period, Defendant Mercy

was owned by Defendants Steven Rogers, Jonathan Reitzell and Mojeed Martins.  There is no dispute that Plaintiffs were employees of Defendants and Defendants fall under enterprise coverage of the FLSA.  As to the individual Defendants, Rogers, Reitzell and Martins, Plaintiffs provide competent summary judgment evidence that the Defendants engaged in operational control, had the ability to hire and fire, set wages for Plaintiffs, determined how they were to be paid, and even personally endorsed the checks given to Plaintiffs as purported wages.  Defendant Mercy admits in its Answer that, "Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. §203(s)(1)." Additionally, as further explained herein, Defendant Mercy had annual gross sales in excess of $500,000.00, with sales of approximately $400,000.00 during the 2017 Super Bowl events alone. Plaintiffs present undisputed evidence that Defendants failed to pay all wages earned in violation of the FLSA.

It is also undisputed based on Defendants' own admissions that Plaintiffs were paid an hourly wage of $2.13 per hour, which is less than the full minimum wage of $7.25 per hour as required by Section 2016 of the FLSA.  29 U.S.C. §206.  Under limited circumstances, an employer may pay tipped employees a subminimum wage pursuant to Section 203(m) (the "tip credit"): however, Defendants cannot rely on the tip credit as an affirmative defense to the payment of the full minimum wage because they cannot prove (1) that they provided Plaintiffs notice of the tip credit; or (2) that Plaintiffs retained all of the tips earned.  Since Defendants cannot satisfy the elements of the tip credit, Defendants cannot rely on tips to bring Plaintiffs effective hourly wage up to the full minimum wage.  Therefore, Defendants violated Section 206 as a matter of law. Defendants also cannot prove that its pay practices were done in good faith and therefore they are liable for liquidated damages.

## II.  STATEMENT OF MATERIAL FACTS

**1.  The 2017 Super Bowl Events at Mercy Nightclub and Plaintiffs' job duties working as employees for Mercy during those events (including hours worked).**

During the time period relevant to this case, Defendants Rogers, Reitzell and Martins were the owners of We Run Texas, LLC which owned Mercy Nightclub.[1]  Defendants held multiple events at Mercy during the 2017 Super Bowl weekend, specifically on February 2nd, 3rd, 4th and 5th.[2]  For the 2017 Super Bowl events, Defendants hired different celebrities (music artists and an athlete) to perform and./or make an appearance at Mercy.[3]  The celebrities were hired to attract more people to Mercy Nightclub during the 2017 Super Bowl events and they were paid by Defendants.[4]

Defendant Mercy acquired the majority of revenue from the 2017 Super Bowl events from the sale of liquor and tickets to enter the club during the events.  In order to handle and serve that liquor to club patrons or customers, Defendants employed cocktail waitresses and runners for the 2017 Super Bowl events.  The Plaintiffs worked as cocktail waitresses and runners for Mercy during events held on February 2nd, 3rd, 4th and 5th, 2017 when the 2017 Super Bowl was held in Houston, Texas ("2017 Super Bowl events").[5]  Prior to their work during the 2017 Super Bowl events, Plaintiffs attended a one-day mandatory meeting and on the job training on January 28, 2017 at Mercy.[6]  Their job duties included delivering bottles of alcohol to customers.[7]  Upon hire, Plaintiffs completed IRS W-4 forms provided by Defendant Mercy.[8]  During the 2017 Super Bowl

---

[1] Steven Rogers Deposition, 14:2-19, Ex. 4; John Caravello Deposition, 21:9-12, Ex. 5.
[2] 2017 Super Bowl Event Advertisements, Exhibit 6-B.
[3] *Id.*
[4] Steven Rogers Deposition, 50:2-51:6, Ex. 4.
[5] Defendants' Supplemental Responses to Plaintiffs Interrogatories, Rog #15, Ex. 2.
[6] Serah Dunphy Declaration (5/17/2018), Ex. 8.
[7] *Id.*
[8] Jonathan Caravello Deposition, 24:13-25:1, Ex. 5.

events, Plaintiffs worked from 7pm to 2am-3am each night.[9]   Some plaintiffs also worked an additional day party event at Mercy on Saturday, Feb. 4, 2017 beginning at 12pm.[10]

## 2.   Defendant Mercy Revenue from the 2017 Super Bowl events

Defendant Steven Rogers testified that he could not recall the gross revenue of Defendant Mercy during the 2017 Super Bowl events.   Defendants have not produced any documents reflecting those figures.   However, the general manager during the relevant time period, Mr. Caravello, testified that sales for the week of the 2017 Super Bowl events was "upwards of $400,000.00 of sales that were done.[11]

## 3.   Plaintiffs' compensation for work performed during the 2017 Super Bowl events at Mercy

Defendant Mercy does not dispute that it was responsible for payment to, "[Plaintiffs] and any other person who has filed a consent to join the Lawsuit," of "**$2.13 per hour worked plus tips**."[12] **(emphasis supplied).**   Defendants admit that Defendant Mercy was responsible for compensating Plaintiffs for work performed at Mercy on February 2nd, 3rd, 4th, and 5th, 2017.[13]   Defendants Rogers, Martins and Reitzell also had personal responsibility for payment to waitresses (including the rate of pay) during the 2017 Super Bowl events.[14]

In Defendant Mercy's employee handbook, the "Tip Sharing Policy" states as follows:

### 18.   *Tip Sharing Policy (Mercy reserves the right to update this at anytime)*

1.   Barstaff:  Tips are pooled.   **5% off the top is tipped to the sweeper staff.**

> After that split, then 15% off that new amount is tipped to the barbacks.   The remainder is divided according to bartender hours worked.   The new total amount

---

[9] Serah Dunphy Declaration, ¶7, Ex. 8; Erin Carantza Declaration, ¶7, Ex.10.
[10] *Id.*
[11] John Caravello Deposition, 48:6-10, Ex. 5.
[12] Defendants" Supplemental Responses to Plaintiffs Interrogatories, Rog #16, Ex. 2; Steven Rogers Deposition, 64:10-12, Ex. 4.
[13] Defendants Supplement Responses to Plaintiffs' Interrogatories, Rog # 22, Ex. 2.
[14] John Caravello Deposition, 56:7-10, Ex. 5; Mojeed Martins Deposition, 40:9-15, 39:5-12, Ex. 11.

is divided by total number of bartender hours worked resulting in an hourly tip rate. That rate is then multiplied by the total number of each individual's hours worked.
e.g. Total tips pooled are $1000. **5%*$1000=$50 tipped to sweeper staff**. New total is $950. 15%*$950 =$142.50 tipped to barback. New total #2 is 807.50. Bartender Joe worked 10 p.m. to 3 a.m. Barternder Sue worked 9.pm. to 3 a.m. Bartender Bob worked 10 p.m. to 3 a.m. Bartender Better worked 8 p.m. to 12 a.m. (All closing shifts end at 3 a.m.). Total bartender hours worked equals 20 hours. $807.50/20=$40.375 tips per hour.

Joe's pay is 5 hours * $40.375= $201.875
Sue's pay is 6 hours * $40.375 = $242.25
Bob's pay is 5 hours * $40.375= $201.875
Betty's pay is 4 hours *$40.375 = $161.50

2. Waitstaff: Tipout is based on a percentage of your sales including sales tx. **2% of sales is tipped to the sweeper staff.** 3% of sales is tipped to the service well bartender. All tipouts are handed in with checkouts and verified by manager on duty.

3. Barbacks: Tips are pooled from the barback tipout per bar and split evenly.

4. Sweepers: No tipout.

- Pocketing tips before tip split is considered theft and will result in immediate termination.[15]

Plaintiffs were informed that they would be paid all tips earned during the 2017 Super Bowl events, including compensation for gratuity on bottles or party packages purchased prior to the event but served by Plaintiffs during the event.[16] Defendant Martin confirmed this stating that cocktail waitresses should have been paid a flat rate for packages sold before the event or prior to the door opening.[17] Any liquor sold after that, Plaintiffs should have received all credit card and cash tips earned as well.[18] However, records indicating some of the cash collected during the 2017 Super Bowl events show that a portion of the tips earned by Plaintiffs were used to pay other employees of Defendants such as sweepers.[19] Additionally, Defendants own policy as stated in its handbook

---

[15] Mercy Employee Handbook, Ex. 7.
[16] Serah Dunphy Declaration, ¶5, Ex. 8; Erin Carantza Declaration, ¶ 5, Ex, 10.
[17] Mojeed Martins Deposition, 56:9-57:4, Ex. 11.
[18] *Id.*
[19] John Caravello Deposition, 62:20-63:1, Ex. 5; Handwritten Record from 2017 Super Bowl events, Ex. 9.

(excerpted above) confirmed that a percentage of tips earned were taken from Plaintiffs and paid

to sweeper staff.  Sweeper staff are individuals employed by Defendants to walk around and sweep

and clean up ice water and trash.[20]

**4.    Defendants failure to pay Plaintiffs all wages earned during the 2017 Super Bowl events.**

John Caravello, a manager who worked for Defendants during the relevant time period,

confirmed that Plaintiffs did not receive all wages earned.[21]

> Q:    There was an issue – you were telling me you were fired because of the pay
> raise and pay scales with regard to the waitresses, I asked you to elaborate
> on that.   You said that the waitstaff didn't get paid what it was supposed to
> be.  What is your understanding as to the disagreement?
>
> A:    My understanding was that the amount of wages that the waitresses thought
> they should be paid for the Super Bowl event – well, they only got paid
> pennies on a dollar to it, and they were not very happy with it.  So – and
> when I confronted the ownership about it, they didn't like that I was on the
> girls' side, pretty much.
>
> Q:    You were on the girls' side about it?
>
> A:    Yes.
>
> Q:    When we say "the girls," were talking about the waitstaff?
>
> A:    Yes.[22]

Mr. Caravello also confirmed that to his knowledge, the cocktail waitresses and runners did not

receive all the tips earned.[23]  Plaintiffs also confirm that they did not receive all wages earned as

cocktail waitresses and runners during the 2017 Super Bowl events.[24]  Plaintiffs earned thousands

of dollars in cash tips alone during the 2017 Super Bowl events turned over those tips to

---

[20] John Caravello Deposition, 62:24-63:1, Ex. 5.
[21] John Caravello Deposition, 7:20-8:11, Ex. 5.
[22] *Id.*
[23] John Caravello Deposition, 55:54-55:10, Ex. 5.
[24] Serah Dunphy Declaration, ¶ 8, Ex. 8; Erin Carantza Declaration, ¶ 8, Ex. 10.

Defendants as instructed, and did not receive all tips earned as wage payments.[25]   Plaintiffs received a small fraction of their compensation in the form of a check personally endorsed by Defendant Steven Rogers.[26]

### 5.   Control of operations at Mercy Nightclub

Defendants Martins, Rogers and Reitzell had control of Defendant Mercy's day-to-day operations and the compensation of the individuals who worked for Mercy.[27]   Defendant Rogers, Martins and Reitzell were also physically present at the 2017 Super Bowl events at Mercy NightclubNightclub and engaged in control of operations such as observing the bottle room area where cocktail waitresses and runners handled bottles of liquor purchased by customers, watched the door where customers entered and walked around interacting with customers.[28]   Defendants also hired the general managers that worked at Mercy during the 2017 Super Bowl events, John Caravello and Tanner Cox.[29]   Defendants Rogers, Reitzell, and Martins had the power to hire as well as discipline and fire employees (such as the general managers) that worked for Mercy.[30]

Defendants hired John Caravello to work as a general manager for Mercy.  There is no dispute that he was an employee of Mercy and reported to Defendants Martins, Rogers and Reitzell.[31]   Defendants Martins, Rogers and Reitzell met with Mr. Caravello regularly and the week of the 2017 Super Bowl events to discuss the program for the events.[32]   Defendants would also regularly meet with Mr. Caravello to discuss day to day operations such as sales, marketing

---

[25] Serah Duphy, ¶¶9, 10,  Ex. 8; Erin Carantza Declaration, ¶¶8, 9, 10, Ex. 10.
[26] Example of Checks for Wages to Plaintiffs Endorsed by Steven Rogers, Ex. 12.
[27] John Caravello Deposition, 56:11-14, Ex. 5.
[28]  John Caravello Deposition, 56:15-57:2, Ex. 5; Steven Rogers Deposition, 39:16-20, Ex. 4; Mojeed Martins Deposition, 47:18-24, Ex. 11 (stating that he attended all of the parties held at Mercy during 2017 Super Bowl events).
[29] Steven Rogers Deposition, 45:22-46: 47:6-11, Ex. 4; John Caravello Deposition, 20:7-19, Ex. 5.
[30] Steven Rogers Deposition, 46:5-16, Ex. 4.
[31] Steven Rogers Deposition, 47:6-11, 57:7-12, Ex. 4..
[32] Steven Rogers Deposition, 49:17-21, Ex. 4; Mojeed Martins Deposition, 39:20-25, Ex. 11.

and promotions.[33]

**6. Defendants failed to keep records and report wages to the Internal Revenue Service or the Texas Workforce Commission.**

Defendant Rogers testified that he could not recall whose responsibility it was to report wages for employees of Mercy Nightclub and he also could not recall where payroll records or documents that would reflect the reporting of wages were housed.[34]  However, Defendant Rogers asserted that he did have access to Defendant Mercy's financial reports and records related to income received during the 2017 Super Bowl events.[35]  Defendant Martins testified that Defendant Mercy would keep track of what was paid to Plaintiffs by writing it down and that Defendants would require Mr. Carvello, their general manager, to send nightly reports.[36]  Despite these facts, in response  to requests for records relating to wages paid to Plaintiffs during the 2017 Super Bowl events, Defendants testified as follows:

> **REQUEST FOR PRODUCTION OF DOCUMENT NO. 7**:  Please produce all documents showing the work time of each Plaintiff and those who have filed consent forms in this matter during the FLSA Collective period, including clock-in and clock-out times for each shift worked and for any breaks taken, and any modifications, alterations, or edits to these records.
>
> **RESPONSE**:  After a diligent search, Defendants have no documents responsive to this request.
>
> **REQUEST FOR PRODUCTION OF DOCUMENT NO. 33**:  Please produce all documents submitted to the IRS or the Texas Workforce Commission reflecting, acknowledging, referencing, mentioning, or relating to any wages paid to Plaintiff and any person who has filed a consent to join this lawsuit.
>
> **RESPONSE**:  After a diligent search, Defendants have no documents responsive to this request.[37]

---

[33] John Caravello Deposition, 33:2-11, Ex. 5.
[34] Steven Rogers Deposition, 35:18-36:1, Ex. 4.
[35] Steven Rogers Deposition, 44:13-22, Ex. 4.
[36] Mojeed Martins Deposition, 42: 4-12; 58:1-25, Ex. 11.
[37] Defendants' Supplemental Response to Plaintiffs' First Requests for Production, Ex. 2.

## III.   ARGUMENTS AND AUTHORITIES

**A.   Summary Judgment Standard of Review**

Summary judgement is appropriate where, taking the evidence in the light most favorable to the non-moving party, no genuine dispute of material facts remains and judgment should be granted as a matter of law.  Fed. R. Civ. P. 56(a); *Vuncannon v. United States*, 711 F.3d 536, 538 (5th Cir. 2013) (per curiam).  A dispute is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  A fact issue is "material" if its resolution could affect the outcome of the action.  *Id.*

The burden of proof in a summary judgment proceeding is on the same party who would bear the burden of proof at trial.  As movant, Plaintiffs must identify the portions of the pleadings, depositions, answers to interrogatories, documents, and admissions on file, together with affidavits, if any, demonstrating the absence of a genuine dispute of material fact.  *Bartolome v. United States*, No., H-0403898, 2006 U.S. Dist. LEXIS 54328, at *3-4 (S.D. Tex. Aug. 4, 2006) (citing Celotex Corp.,477 U.S. 317, 323-24 (1986). The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion. *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir.1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations" or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

**B.** **Defendants were Employers under the FLSA through enterprise coverage and there is an Employer-Employee Relationship between Defendants and Plaintiffs**

      *i.* ***Defendant We Run Texas ("Mercy Nightclub")***

Enterprise coverage requires that the enterprise, (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sale made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated."29 U.S.C. § 203(s)(1). *Landeros v. Fu King, Inc.,* 12 F. Supp. 3d 1020 (S.D. Tex. 2014) (citing *Polycarpe v. E & S Landscaping Serv., Inc.,* 616 F.3d 1217, 1221 (11th Cir. 2010); 29 U.S.C. § 203(s)(1)(A)(i)); *see also, e.g., Radulescu v. Moldowan,* 845 F. Supp. 1260, 1364 (N.D. Ill. 1994) ("local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce")

> **Consistent with this Circuit's view, *Polycarpe* explained that the reference to goods or materials that "*have been* moved in or *produced* for" interstate commerce reveals Congress's intent to regulate enterprises dealing in articles *acquired intrastate* after travel in interstate commerce.**

*Landeros v. Fu King, Inc.,* 12 F. Supp. 3d at 1024. (internal quotations omitted) **(emphasis supplied).** The Fifth Circuit further explains the broad coverage of the FLSA in under the 1974 amendments stating:

> Congress reached further than it had before under the Commerce Clause by including as an "enterprise engaged in commerce" one which had employees "handling, selling, or otherwise working on goods that have been moved in or produced for commerce.  This change extended coverage to businesses with employees engaged in handling or utilizing goods after they had ceased the interstate portion of their movement. This approach reached those nearer the end of the chain of distribution, *e.g.,* retail and service establishments whose businesses were otherwise local in character.

*Dunlop v. Industrial America Corp.*, 516 F.2d 498, 501 (5th Cir. 1975) (internal citations omitted).

In its Answer, Defendant Mercy Nightclub admits that it has "been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA."[38] The Fifth Circuit "has long noted that factual statements in the pleadings constitute binding judicial admissions." *McCreary v. Richardson*, 738 F.3d 651, 659 n.5 (5th Cir. 2013). "[F]actual assertions in pleadings are ... judicial admissions *conclusively* binding on the party that made them." *Davis v. A.G. Edwards and Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (quoting *White v. ARCO/Polymers*, 720 F.2d 1391, 1396 (5th Cir. 1983)) (emphasis added in *Davis*). This is the case irrespective of evidence to the contrary, as "[f]acts that are admitted in the pleadings 'are no longer at issue.' " *Davis*, 823 F.3d at 108 (quoting *Ferguson v. Neighborhood Housing Services, Inc.*, 780 F.2d 549, 551 (6th Cir. 1986)).  *Myers v. Manchester Insurance & Indemnity Co.,* 572 F.2d 134 (5th Cir.1978) (factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them.).  Accordingly, by their own admission, Defendant Mercy is an enterprise engages in commerce within the meaning of the FLSA.

In the alternative, Plaintiff presents competent summary judgment evidence that Defendant Mercy engaged in interstate commerce as Plaintiffs and other employees who worked for Defendants handled, sold, or otherwise worked on goods that have been moved in or produced for commerce.  Defendants purchase liquor, a good and/or material moved in and produced for interstate commerce to then sell to its customers.  Plaintiffs and other employees of Defendants handle and sell that liquor to Defendants customers as part of their job.  This type of "handling" and selling: of goods and materials deals with the type of activity that Congress intended to regulate pursuant to the FLSA 1974 amendments and recognized by this Circuit under enterprise coverage.

---

[38] Defendant's Answer to Plaintiffs' First Amended Complaint, ¶ 5.2 [Dkt. 32].

*Id.*; see also *Landeros v. Fu King, Inc.,* 12 F. Supp. 3d at 1024.

Defendants summarily state that, "Plaintiffs have no evidence that Defendant Mercy has employees engaged in commerce or in the production of goods for commerce, or has employees handling, selling or otherwise working on goods or material that have been moved in or produced for commerce by any person."[39]  Defendants provide no supporting facts to support that assertion. The two cases cited by Defendants in their Motion speak to individual coverage only.  Specifically, Defendants cite to *Sobrino v. Medical Centers Visitors Lounge, Inc*., 474 F.3d 828, 829 (5th Cir. 2007) to support its argument that, "Plaintiffs have no evidence that Plaintiffs worked as employees engaged in commerce or in the production of goods for commerce sufficient to establish individual coverage under the FLSA."[40]  *Sobrinio*'s sole challenge was the plaintiff's individual coverage, that he was not "engaged in commerce" under the FLSA. The Court of Appeals noted, that "this leaves *Sobrinio* with a relatively difficult argument under the FLSA, as "[t]he test of whether one is in commerce is obviously more exacting than the test of whether his occupation is necessary to production for commerce."  This case is distinguishable as Plaintiffs are asserting enterprise coverage.

In *Leon v. Tapas & Tintos, Inc*., 51 F. Supp. 3d 1290 (S.D. Fla. 2014), the court found it reasonable to infer that, first, foods or materials used in defendant's restaurant moved in interstate commerce before they were delivered to the restaurant, or second, that the goods or materials handled by plaintiff in his various duties  were "necessary for doing or making something" for the restaurant's commercial purpose.  Similarly, in the instant case, it is reasonable to infer that liquor such as Hennessy, Duse and Ciroc that are not manufactured within Texas, first moved in interstate

---

[39] Defendant's Motion, at pp. 4-5.
[40] Defendant's Motion, at ¶15, p. 4.

commerce before they were delivered to Mercy Nightclub.[41]  Additionally, the former general manager of Mercy (who worked during the period of time relevant to this case), testifies that the liquor purchased by Mercy was handled and sold to its customers by the Plaintiffs as part of their job duties.[42]  *Diaz v. Jaguar Restaurant Group, LLC,* 649 F.Supp.2d 1343, 1346–48 (S.D. Fla. 2009) (finding restaurant employees handled materials in commerce and were therefore subject to FLSA).  Therefore, Plaintiffs (and other employees working for Defendant such as bartenders and barbacks) are handling and selling materials in interstate commerce.

In *Boekemeir v. Fourth Universalist Society in City of New York*, plaintiff's handling of janitorial goods that have moved in commerce was sufficient to invoke enterprise coverage should the defendant meet the FLSA's gross dollar volume requirement.  *Boekemeir v. Fourth Universalist Society in City of New York,* 86 F. Supp. 2d 280 (S.D. N.Y. 2000).  In this case, Plaintiffs handling of liquor that moved in commerce is also sufficient to invoke enterprise coverage.[43]

In *Foster v. Gold & Silver Private Club, Inc*., a group of exotic dancers sued the club where they danced and alleged failure to pay the minimum wage under the FLSA. *Foster v. Gold & Silver Private Club, Inc*, Civ. No. 7:14CV00698, 2015 WL 8489998 (W.D. Va. Dec. 8, 2015).  In response to defendants' challenge to FLSA coverage, the *Foster* court held that because the dancers were required as part of their job to regularly use the Internet to stream music, they were engaged in interstate commerce and subject to the FLSA.  *Id.* at *6 ("It is well-settled that the internet is an instrumentality of internet commerce.").  Additionally, in the instant case, Defendants payment of out of state celebrities to make and appearance at Mercy for the 2017 Super Bowl

---

[41] Caravello Declaration, ¶ ¶3, 4, Ex. 6; see also, List of Liquor Sold and Pricing for 2017 Super Bowl Events, Ex. 6-A.
[42] Caravello Declaration, ¶¶ 3, 4, Ex. 6
[43] Caravello Declaration, ¶¶ 3 -7, Ex. 6.

events, and the selling of tickets and liquor for the events through the Evenbrite.com internet site and marketing advertisements.  Defendants also advertised the 2017 Super Bowl events on social media including Instagram and Facebook.[44]  *Finger Furniture Co., Inc. v. Mattress Firm Inc*., No. Civ. A. H-05-0299, 2005 WL 1606934, at *5 (S.D. Tex. 2005) ("Transfer of products and advertisements through the internet is considered interstate commerce.") (internal citations omitted); see also ("It is beyond debate that the Internet and email are facilities or means of interstate commerce.") (*United States v. Barlow*, 568 F. 3d 215, 220 (5th Cir. 2009).  Further, Defendants paid out of state celebrities (at least partially) by wire transfer for their appearance at Mercy during the 2017 Super Bowl events.[45] This engaging in interstate commerce through the internet and specifically sales for the 2017 Super Bowl events also satisfies interstate commerce and enterprise coverage under the FLSA.[46]

Additionally, since Plaintiffs present competent summary judgment evidence that Defendant Mercy grossed approximately $400,000.00 as a result of the 2017 Super Bowl events alone (which were only 4-5 days of the first quarter of the year), it is assumed under the Secretary of Labor's guidance, that "this representative figure would allow for the determination that Defendants' annual dollar volume exceeded $500,000.00." *Landeros v. Fu King., Inc.,* 12 F. Supp. 3d 1020, 1026-1027 (S.D. Tex. 2014).  In *Landeros v. Fu King, Inc*., the Court stated that where annual dollar volume for the year at issue could not be computed, plaintiffs were allowed to apply the "rolling quarter" method, where if gross sales exceeded $125,000.00 for the first quarter, this could be taken as a representative figure and allow a determination that defendant meets the $500,000.00 annual sales volume rendering FLSA coverage.  *Id.*   Even considering just

---

[44] John Caravello Declaration, ¶ 7 Ex, 6.
[45] John Caravello Declaration, ¶ 5, Ex. 6.
[46] John Caravello Declaration, ¶ 8, Ex. 6; see also Eventbrite Advertisement for 2017 Super Bowl Events, Ex. 6-B.

Defendants "Nightly Close Out Reports" for February 2nd, 3rd, 4th and 5th, 2017, which purportedly documents sales that night within Mercy (apparently not including internet sales), the total sales is $125, 161.00.  Therefore, like in *Landeros*, within the first quarter of 2017, Defendants had gross sales of at least $125,00.00 and the $500,000.00 annual sales volume would be applied rendering FLSA coverage.

Accordingly, in light of the judicial admission as to engagement in interstate commerce, competent summary judgment evidence establishing interstate commerce and Defendants undisputed $500,000.00 in sales for 2017, Defendants are coverage under the FLSA pursuant to enterprise coverage.

### ii.    *Defendants Rogers, Martins and Reitzell*

Whether a person is an employer under the FLSA is a question of law, although "subsidiary findings are of fact." *Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1327 (5th Cir.1985).  Analyzing whether a person is an "employer" under the FLSA, "must focus upon the totality of the circumstances, underscoring the economic realities of the [employees'] employment." *Donovan v. Sabine Irrigation Co.,* 695 F.2d 190, 194 (5th Cir. 1983); *see also Kaminski v. BWW Sugar Land Partners*, Civ. A. No. H-10-551, 2010 WL 4817057, at *2 (S.D. Tex. Nov. 19, 2010). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Grim Hotel Co.,* 747 F.2d at 972 (quoting *Donovan v. Agnew,*712 F.2d 1509, 1511 (1st Cir.1983)); *see Lee v. Coahoma County, Mississippi,* 937 F.2d 220, 226 (5th Cir.1991).

Under the economic reality test, the Court considers whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work

schedules or conditions of employment, (3) determined the rate and method of payment,[47] and (4) maintained employment records.  *Gray v. Powers,* 673 F.3d 352, 354 (5th Cir. 2012).  **However, a party need not establish each element in every case.**  *Id.* at 357.  **(emphasis supplied)**.  "The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Martin v. Spring Break '83 Prods., LLC,* 688 F.3d 247, 251 (5th Cir.2012) (citation and internal quotation marks omitted).  Moreover, "[t]he remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *McLaughlin   v.   Seafood,   Inc.,* 867   F.2d   875,   877   (5th   Cir.1989) (per curiam), *modifying* 861 F.2d 450 (5th Cir.1988).

Defendants Martins, Rogers and Reitzell had control of Defendant Mercy's day-to-day operations and the compensation of the individuals who worked for Mercy, including Plaintiffs.[48] *Dole v. Haulaway Inc.,* 723 F. Supp. 274, 286–87 (D.N.J.1989) ("A corporate officer with operational control is an 'employer,' along with the corporation, jointly and severally liable under the [FLSA] for unpaid wages. Further, any such corporate officer is liable in his individual, not representative, capacity." (citation omitted)), *aff'd mem.,* 914 F.2d 242 (3d Cir.1990).  Defendant Rogers, Martins and Reitzell were also physically present at the 2017 Super Bowl events at Mercy Nightclub and engaged in control of operations such as observing the bottle room area where cocktail waitresses and runners handled bottles of liquor purchased by customers, watched the door and walked around interacting with customers.[49]   Defendants Rogers, Martins and Retizell

---

[47] John Caravello Deposition, 10:15-20, Ex. 5 (stating that the owners made the decision to what the waitstaff was to be paid during the 2017 Super Bowl events at Mercy).
[48] John Caravello Deposition, 56:11-14, Ex. 5.
[49] John Caravello Deposition, 56:15-57:2, Ex. 5; Steven Rogers Deposition, 39:16-20, Ex. 4; Mojeed Martins Deposition, 47:18-24, Ex. 11 (stating that he attended all of the parties held at Mercy during 2017 Super Bowl events).

also hired the general managers that worked at Mercy during the 2017 Super Bowl events, John Caravello and Tanner Cox.[50]   These managers reported to Defendants Rogers, Reitzell and Martins, and Caravello met with the Defendants to get instructions on how the 2017 Super Bowl events would run.[51]   Defendants Rogers, Reitzell, and Martins had the power to hire as well as discipline and fire employees (such as the general managers) that worked for Mercy.[52] Specifically, Defendants Rogers, Martins and Reitzell had the final say on hiring the Plaintiffs during the Super Bowl 2017 events although interviews were delegated to the managers.[53]   Further, Defendant Rogers personally endorsed the checks given to Plaintiffs as wages earned.[54] Defendants Rogers, Martins and Reitzell also had personal responsibility for payment to waitresses (including the rate of pay) during the 2017 Super Bowl events.[55]   Defendants Rogers, Martins and Reitzell also shared in profits from Defendant Mercy.[56]   *Golizio v. Antonine Holding, Inc.,* No. 96–3142, 1997 WL 47781, at *5 (E.D. La. Feb.5, 1997) (holding that the defendant was an employer under the FLSA because he signed over 1,000 corporate checks, was in charge of the restaurant's daily operations, had the potential to share in profits, had the power to enter into contracts on the restaurant's behalf, and had a stock repurchase agreement).

In *Riech v. Priba Corp.,* Izzedin the entrepreneur, sole shareholder and promoter of defendant who was not directly responsible for the day to day operations of the club but did stay involved in major decision making, the club's image and expansion, oversaw the managers, and on occasion hired waitresses was held to be an "employer" within the meaning of the FLSA. *Riech*

[50] Steven Rogers Deposition, 45:22-46: 47:6-11, Ex. 4; John Caravello Deposition, 20:7-19, Ex. 5.
[51] John Caravello Deposition, 12; 4-11, 33:18-34:4, 39:2-7, Ex. 5.
[52] Steven Rogers Deposition, 46:5-16, Ex. 4.
[53] John Caravello Deposition, 23:20-23, Ex. 5.
[54] Example of Checks for Wages to Plaintiffs Endorsed by Steven Rogers, Ex. 12; Steven Rogers Deposition, 66:5-67:21, Ex. 4.
[55] John Caravello Deposition, 56:7-10, Ex. 5; Mojeed Martins Deposition, 40:9-15, 39:5-12, Ex. 11.
[56] Steven Rogers Deposition, 14:2-17, 23:8-13, Ex. 4; Mojeed Martins Deposition, 9:20-10:13, Ex. 11.

*v. Priba Corp.*, 890 F. Supp. 586, 590 (N.D. Tex. 1995).  The *Riech* Court found that the individual defendants, "involvement in developing Cabaret Royale and his subsequent efforts to develop such establishments in other markets…clearly demonstrate that [the individual defendant] occupies the status of an employer within the meaning of § 3(d) of the FLSA. *Id.* at 590.  Similarly, in the instant case, Defendants Rogers, Martins and Reitzell would be liable as employers under the FLSA. There is no evidence to dispute this fact.

### iii.    *Plaintiffs' Employee Status*

It is also undisputed that Plaintiffs worked as employees for Defendants and not independent contractors.  Plaintiffs were required to fill out W-4 forms.[57]  They were also required to wear a uniform designated by Defendants, they received training prior to their work and received set schedules and instructions as to their work performance from Defendants.[58]   Although Defendants assert in their Answer that Plaintiffs, "were not employees of Defendants…" there is no evidence to support this defense.[59]  Additionally Defendants admit that they claimed a tip credit for Plaintiffs paying them $2.13 per hour plus tips, which is only applicable to employees under the FLSA.[60]  *Steele v. Leasing Enterprises, Ltd.,* 826 F.3d. 237, 242 (5th Cir. 2017).

## C.    Defendants Improperly Claimed a Tip Credit and Violated the FLSA with regards to Tip Pooling

Applicable to the present controversy, the Defendants were required to satisfy the following two statutory prerequisites in order to utilize the "tip credit" allowance: (1) Defendants must inform the employee of the provisions in section 203(m); and (2) all tips received by an employee must be retained by the employee, "except that [§ 203(m) ] shall not be construed to

---

[57] John Caravello Deposition, 24:7-16, Ex. 5.
[58] See Serah Dunphy Declaration, ¶¶ 2-7, Ex. 8; Erin Carantza Declaration, ¶¶ 2-7, Ex. 10.
[59] Defendants' Answer, ¶2 [Dkt. 32].
[60] Defendants" Supplemental Responses to Plaintiffs Interrogatories, Rog #16, Ex. 2; Steven Rogers Deposition, 64:10-12, Ex. 4.

*Plaintiffs' Motion for Summary Judgment*                                                                                  18

prohibit the pooling of tips among employees who customarily and regularly receive tips." *See* 29 U.S.C. § 203(m). If the employer fails to meet either of these requirements, it is not eligible to claim the tip credit, and in such a case, the employer must pay each employee the full minimum wage of $7.25 an hour that is required under section 206. *See Bernal v. Vankar Enter., Inc.,* No. SA–07–CA–695–XR, 2008 WL 791963, at *2 (W.D. Tex. March 24, 2008) (Rodriguez, J.); *accord Rousseau v. Frederick's Bistro, LTD,* No. SA–09–CV–651–XR, 2010 WL 1425599, at *2 (W. D. Tex. April 7, 2010) (Rodriguez, J.)("The two requirements must be satisfied if an employer is to be eligible for the tip credit, and if the requirements are not satisfied, the full minimum wage must be paid to the employee."). The Supreme Court has explicitly stated that "the general rule [is] that the application of an exemption under the FLSA is a matter of affirmative defense on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-197 (1974).

> **More recently, the district courts within the Fifth Circuit that have considered the issue have unanimously concurred that "Defendants, as the employers, bear the burden of proving that they are entitled to taking tip credits."**

*Pedigo v. Austin Rumba, Inc.,* 722 F. Supp. 2d 714, 736 (W.D. Tex. 2010) (citing *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 808 (W. D. Tex. Sept.30, 2008); *Lewis v. Adams Sys., LLC*, No. H– 08–2009, 2008 WL 4858356, at *3 (S.D. Tex. Nov. 10, 2008); *Reich v. Priba Corp.*, 890 F. Supp. 586, 596 (N.D. Tex. March 27, 1995).**(emphasis supplied)**. Defendants are unable to meet their burden and thus are not eligible to claim a tip credit.

(i)      ***Defendants failed to inform the plaintiffs of its intent to utilize the tip credit***

There is no factual dispute that Defendants failed to inform Plaintiffs of their intent to utilize the tip credit. The first requirement of § 203(m) is that the employer must inform the employee of the tip credit provisions. To meet this requirement, an employer need not explain the

tip credit in detail to its employees. *Kilgore v. Outback Steakhouse of Florida, Inc.,* 160 F.3d 294, 298 (6th Cir.1998); *Pedigo,* 722 F.Supp.2d at 725; *Bernal v. Vankar Enterprises, Inc.,* 579 F.Supp.2d 804, 809 (W.D.Tex.2008); *Lentz v. Spanky's Restaurant II, Inc.,* 491 F.Supp.2d 663, 672 (N.D.Tex.2007). However, it must at a minimum inform the employees that "it intends to treat tips as satisfying part of the employer's minimum wage obligation." *Kilgore,* 160 F.3d at 298 (citing *Martin v. Tango's Restaurant, Inc.,*969 F.2d 1319, 1322 (1st Cir.1992)); *Pedigo,* 722 F.Supp.2d at 725; *Bernal,* 579 F.Supp.2d at 809; *Lentz,* 491 F.Supp.2d at 672. An employee's awareness of an industry-wide practice that employers generally use a tip credit does not satisfy this requirement. *Bernal,* 579 F.Supp.2d at 809.

Plaintiffs in this case confirm that they were not informed of the tip credit.  In fact, they were told that they would be paid "under the table" and received a check personally endorsed by Defendant Rogers, that did not contain any break down as to their wages or identify a tip credit.[61] Further, although Plaintiffs contend they never received Defendant Mercy's purported employee handbook, even that document does not contain any information as to a tip credit being taken.[62] *Gustavus v. Cazos, Inc*., 774 F. Supp. 2d 856, 858-859 (S.D. Texas 2011) (finding that an employee manual that reminded employees of the percentage of tips shared with other employees was insufficient to inform employees of tip credit.). After the filing of this lawsuit, in response to discovery requests, Defendant asserted that a tip credit was taken stating, that Plaintiffs were paid, "$2.13 per hour worked **plus tips**."[63] *Gustavus v. Cazos, Inc*., 774 F. Supp. 2d 856, 858-859 (S.D. Texas 2011) ("no reasonable juror could find from the summary judgment evidence that [the defendant] informed the plaintiffs of its intent to utilize the tip credit provisions of 29 U.S.C. §

---

[61] Serah Dunphy Declaration in Support of Motion for Summary Judgment, ¶11, Ex. 8.
[62] Mercy Employee Handbook, Ex.7.
[63] Defendants' Responses to Plaintiffs' Interrogatories, Rog # 16, Ex. 1.

***Plaintiffs' Motion for Summary Judgment***                                                                 20

203(m).") Therefore, there is no dispute that Defendants improperly used a tip credit and Plaintiffs are entitled to summary judgment on Defendants' tip credit defense. *Id*. at 858-859.

### (ii)    *All tips received by Plaintiff were not retained and were split amongst employees who do not customarily receive tips in violation of the FLSA.*

The second requirement of the tip credit provision requires all tips received by an employee to be retained by the employee, except that an employer may require an employee to pool tips with employees who customarily and regularly receive tips. 29 U.S.C. § 203(m).  Plaintiffs did not retain all of their tips because they were forced to pool their tips with employees who did not customarily and regularly receive tips.[64]  Additionally, Defendants just failed to pay Plaintiffs all tips earned.[65]

. Defendant asserts that it paid Plaintiffs $2.13 per hour worked plus tips for work performed as a cocktail waitress and/or runner at Mercy Nightclub during the FLSA Collective Period.[66]  There is undisputed evidence that Defendants deducted amounts from Plaintiffs tips to pay sweeping staff.[67]  In addition to its internal documents documenting these payments for the events Plaintiffs worked during the 2017 Super Bowl, Defendant Mercy's employee handbook also states that a percentage of tips (either 2% or 5%) were taken from the tips earned by both bar staff and waitstaff, which would have included Plaintiff's, and given to the sweeper staff.[68]  Additionally, Defendant Rogers confirmed that the sweeper staff would not receive tips directly from customers.

Q:    Was it fair to say that the sweeper staff would not be receiving tips directly
       from customers?

---

[64] See generally, Plaintiff's Second Amended Complaint, [Dkt. 85].
[65] See generally, Serah Dunphy Declaration, Ex. 8; Erin Carantza Declaration, Ex. 10.
[66] Defendants' Responses to Plaintiffs' Interrogatories, Rog # 16, Ex. 1.
[67] Handwritten Record from 2017 Super Bowl events, Ex. 9; Mercy Employee Handbook, p. 13, Ex. 7.
[68] Mercy Employee Handbook, p. 13, Ex.7.

A:      Correct.[69]

*Bernal v. Vankar Enterprises, Inc.,* 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (granting summary judgment where unrebutted evidence established that defendants deducted amounts from plaintiffs' nightly tips concluding such action disqualified defendants from taking advantage of the FLSA tip credit provisions).  Sweeper staff did not have regularly interaction with customers and did not customarily and regularly receive tips.

Furthermore, Plaintiffs were not paid all tips earned during the 2017 Super Bowl events. For example, Plaintiff Dunphy received a $522.00 check for all of her work during the 2017 Super Bowl events.[70]  Plaintiffs earned thousands of dollars in cash tips alone during the 2017 Super Bowl events, were required to turn then in to participate in a tip pool and did not receive those earned wages.[71]  Even if Defendants assert that Plaintiffs were paid the minimum wage even when their tips were taken out, "[C]ourts have found violations of Section 203(m) (and therefore of federal minimum wage laws) even where the employees were, in fact, paid the minimum wage once their tips were taken into account." *Bernal,* 579 F.Supp.2d at 808 (citing to two cases, omitted here, as examples).

Accordingly, there is undisputed evidence that Defendants engaged in illegal tip pooling forcing Plaintiffs to share tips with employees not customarily and regularly receiving tips as well as retained portions of Plaintiffs tips failing to pay all wages earned.  Therefore, Defendants are unable to meet their burden to establish a legal tip pool or meet the requirements for a tip credit defense and thus, Plaintiffs' motion for summary judgement should be granted.

---

[69] Steven Rogers Deposition, 63:14-16, Ex. 4.
[70] Example of Checks for Wages to Plaintiffs Endorsed by Steven Rogers, Ex. 12.
[71] Serah Dunphy Declaration (5.17.18), ¶8, Ex. 8.

**D.**   **Defendants failed to comply with the FLSA record keeping requirements**

In addition, Defendants failed to keep records of the exact amount and manner of wages earned by Plaintiffs or hours worked by Plaintiffs. Because Defendants have directly stated that they retained no records of Plaintiffs time worked or wages earned, if Plaintiffs establish liability of the asserted FLSA violations, Plaintiffs are entitled to damages based on their own testimony about hours worked and wages owed.

The Supreme Court has held that in the absence of employment records, wages owed to an employee should be awarded even if approximate, if (1) the evidence shows that the employee performed work for which there was improper compensation and (2) the amount and the extent of work can reasonably be inferred.  *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946).  ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of ... the [FLSA].")

 In response to Plaintiffs Requests for Production Defendants stated as follows:

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 7**:  Please produce all documents showing the work time of each Plaintiff and those who have filed consent forms in this matter during the FLSA Collective period, including clock-in and clock-out times for each shift worked and for any breaks taken, and any modifications, alterations, or edits to these records.

**RESPONSE**:  After a diligent search, Defendants have no documents responsive to this request.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 33**:  Please produce all documents submitted to the IRS or the Texas Workforce Commission reflecting, acknowledging, referencing, mentioning, or relating to any wages paid to Plaintiff and any person who has filed a consent to join this lawsuit.

**RESPONSE**:  After a diligent search, Defendants have no documents responsive to this request.[72]

---

[72] Defendants Supplemental Response to Plaintiffs' First Requests for Production, Ex. 2.

Defendants cannot attest to the amount and manner of wages earned by Plaintiff any person who filed a consent to join this Lawsuit for worked performed at Mercy Nightclub on February 2, 3, 4, and 5th, 2017.[73]   Defendants further stated, "[D]efendants are unaware of the exact hours worked by Plaintiff and any person who has filed a consent to join the lawsuit on February 2, 3, 4, 2017."[74]

Although Defendants cannot produce any records as to wages, Plaintiffs would be able to estimate cash tips received based on their personal knowledge as well as notes purportedly written by one of Defendants managers contemporaneously with the 2017 Super Bowl events.[75] Additionally, Plaintiffs were to receive 20% gratuity from online bottle sales that were then served to Defendants' customers by Plaintiffs during the 2017 Super Bowl events.[76]   Defendants former manager also testified that the Plaintiffs had six to eight hour shifts during the 2017 Super Bowl events with some Plaintiffs working a double shift on one day where there was a day event and night party held.[77]   Therefore, Plaintiffs request that the Court order damages be based on Plaintiffs' own testimony and what documents are available reflecting cash and credit card tips Plaintiffs received.  Defendants cannot complain of lack of exactness as it is undisputed they failed to keep records in accordance with the FLSA.

**E.**   **If Summary Judgment is Granted, Plaintiffs request the case be referred to the magistrate for all further matters necessary to determine the amount of damages pursuant to Defendants violation of the FLSA or in the alternative, the Court order mediation on the issue of damages and attorney's fees.**

If this Court grants Plaintiffs' Motion for Summary Judgment on liability, Plaintiffs respectfully request that the Court refer the case to the Magistrate for all other matters necessary

---

[73] Defendants' Response to Plaintiffs' Interrogations, Rog #25, Ex. 1.
[74] Defendants' Response to Plaintiffs' Interrogatories, Rog # 20, Ex. 1.
[75] Handwritten Record from 2017 Super Bowl events, Ex. 9; John Caravello Deposition, 61:7-22, 62:14-15, Ex. 5.
[76] Serah Dunphy Declaration, ¶5, Ex. 8.
[77] John Caravello Deposition, 60:13-61:6, Ex. 5.

to determine the amount of damages pursuant to Defendants violation of the FLSA. *Whitehead v. Hidden Tavern, Inc.,* 765 F.Supp.2d 878, 883 (W.D. Tex. 2011).

In the alternative, Plaintiffs request that if summary judgment is granted on liability, the Court order mediation by a date certain on the issue of damages and attorneys' fees. *Pedigo v. Austin Rumba, Inc.,* 722 F. Supp. 2d 714, 736-37 (2010) (granting summary judgment on liability as to each of plaintiffs claims under the FLSA and ordering that the parties "shall mediate the issue of damages and attorney's fees and submit an alternative dispute resolution report" by a date certain.); 29 U.S.C. §626(b); 29 U.S.C §216(b) ("the court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant."). Fee awards are mandatory for prevailing plaintiffs in FLSA cases. *See Kreager v. Solomon & Flanagan P.A.,* 775 F.2d 1541, 1542 (11th Cir.1985); *see also Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791 (1989).

## F.  CONCLUSION

Plaintiffs have established the absence of any genuine issue of material fact on FLSA coverage and employer-employee relationship between Plaintiffs and Defendants.  Further, there is an absence of any genuine issue of material fact on Plaintiffs' FLSA claims for unpaid wages including tips retained by Defendants, and an illegal tip pool.  Plaintiffs have also established that Defendant will be unable to meet its burden regarding application of a tip credit under the FLSA. Accordingly, Plaintiffs respectfully requests that their motion for summary judgment be granted as to liability of Defendants violation of the FLSA and the resulting wages rightfully earned by Plaintiffs and owed to them.  Plaintiffs' further request that this Court order this case proceed to a Magistrate or in the alternative be ordered to mediation on the issue of damages and attorneys fees only.

Respectfully submitted,

*/s/ Gregg M. Rosenberg*
Gregg M. Rosenberg
USDC SD/TX No. 7325
Texas State Bar ID 17268750
Gregg@rosenberglaw.com
Tracey D. Lewis
USDC SD/TX No. 212007
Texas State Bar ID 24090230
Tracey@rosenberglaw.com
ROSENBERG | SPROVACH
3518 Travis, Suite 200
Houston, Texas 77002
(713) 960-8300
(713) 621-6670 (Facsimile)
Attorney-in-Charge for Plaintiff

OF COUNSEL:
ROSENBERG | SPROVACH

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of this document by all counsel of record and by means of the ECF electronic filing system and Defendants prospective new counsel who has not yet filed an appearance to date via email on September 27, 2019, to:

Derek H. Deyon
The Deyon Law Group, PLLC
P.O. Box 8145
Houston, Texas 77288

*/s/ Gregg M. Rosenberg*
Gregg M. Rosenberg