IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SERAH DUNPHY, Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| PROJECT ARISTOCRAT LIFE FOUNDATION; WERUNTEXAS, LLC d/b/a MERCY; WE RUN HOU, LLC d/b/a ENGINE ROOM; JONATHAN REITZELL; STEVEN A. ROGERS; JOHN CARAVELLO; TANNER COX; and MOJEED MARTINS, JR., | § § § § § § § § | CIVIL ACTION NO. H-17-1225 |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Serah Dunphy, on behalf of herself and similarly situated individuals (collectively "Plaintiffs"), filed this action against defendants Project Aristocrat Life Foundation, WeRunTexas, LCC d/b/a Mercy, We Run Hou, LLC d/b/a Engine Room, Jonathan Reitzell, Steven A. Rogers, John Caravello, Tanner Cox, and Mojeed Martins, Jr. alleging that the defendants violated the Fair Labor Standards Act ("FLSA") by failing to pay employees wages for hours worked and withholding tips.[1] Pending before the court are

---

[1]See Plaintiff's Second Amended Collective Action Complaint ("Second Amended Complaint"), Docket Entry No. 85, pp. 7-8. All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

Defendants' Rule 56 Motion for Partial Summary Judgment ("Defendants' MSJ") (Docket Entry No. 112); Plaintiffs' Motion for Summary Judgment ("Plaintiffs' MSJ") (Docket Entry No. 114); Defendants' Motion for Leave to File Amended Pleading ("Defendants' Motion to Amend") (Docket Entry No. 118); Defendants' Supplemental Motion for Continuance and Response to Plaintiff's Motion for Summary Judgment ("Defendants' Supplemental Motion for Continuance and Response") (Docket Entry No. 120); and Plaintiff's Motion to Strike Defendants' Supplemental Response to Plaintiffs' Motion for Summary Judgment and Defendants' Exhibits 3 and 4 to Defendants' Response to Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion to Strike") (Docket Entry No. 122). Only Defendants WeRunTexas, LLC d/b/a Mercy ("Mercy"), Mojeed Martins, Jonathan Reitzell, and Steven Rogers (collectively "Defendants") have filed motions. For the reasons explained below, Defendants' motions will be denied, Plaintiff's Motion to Strike will be denied, and Plaintiff's Motion for Summary Judgment will be granted in part and denied in part.

## I.  Factual and Procedural Background

Mercy Nightclub ("Mercy") is located in Houston, Texas, and in February of 2017 was owned and operated by WeRunTexas, LLC.[2] WeRunTexas is co-owned by individual defendants Steven Rogers, Jonathan Reitzell, and Mojeed Martins, Jr. (collectively "the

---

[2]Declaration of John Caravello ("Caravello Declaration"), Exhibit 6 to Plaintiff's MSJ, Docket Entry No. 114-6, p. 2 ¶ 2.

Co-owners").[3]    The Co-owners hired John Caravello as general manager to run Mercy.[4]    The Co-owners were not passive shareholders; they had areas of responsibility and played some role in managing the club.[5] Steven Rogers, for example, was responsible for building maintenance.[6]    The Co-owners oversaw the club's managers and met regularly with John Caravello to discuss marketing, operations, and performance.[7]    John Caravello's uncontradicted testimony also states that all three of the Co-owners were responsible for paying the waitstaff and exercised control over operations of the club.[8]

Mercy hosted several special events on February 2, 3, 4, and 5 of 2017 for that year's Super Bowl.[9]    Mercy's Co-owners hired

---

[3]Oral Deposition of Steven A. Rogers ("Rogers Deposition"), Exhibit 4 to Plaintiff's MSJ, Docket Entry No. 114-4, p. 3.

[4]John Caravello Offer Letter, Exhibit 2 to Defendants' Motion for Continuance and Response to Plaintiff's Motion for Summary Judgment ("Defendants' Response and Motion for Continuance"), Docket Entry No. 119-2, p. 2; Rogers Deposition, Exhibit 4 to Plaintiff's MSJ, Docket Entry No. 114-4, p. 10.

[5]Rogers Deposition, Exhibit 4 to Plaintiff's MSJ, Docket Entry No. 114-4, p. 5.

[6]Id. at 7.

[7]Id. at 10; Oral Deposition of John Caravello ("Caravello Deposition"), Exhibit 5 to Plaintiff's MSJ, Docket Entry No. 114-5, pp. 11-12; Oral Deposition of Mojeed Martins ("Martins Deposition"), Exhibit 11 to Plaintiff's MSJ, Docket Entry No. 114-13, pp. 5-6.

[8]Caravello Deposition, Exhibit 5 to Plaintiff's MSJ, Docket Entry No. 114-5, pp. 5-6, 16.

[9]2017 Super Bowl Event Advertisements, Exhibit 6-B to Plaintiff's Response to Defendants' Rule 56 Motion for Partial Summary Judgment ("Plaintiff's Response"), Docket Entry No. 117-8, pp. 3-6.

music artists and celebrities to appear at the club in order to attract more customers over the weekend.[10] The events were advertised online, and table reservations and liquor packages could be purchased online.[11] To handle the expected patronage that weekend, Mercy hired cocktail waitresses and runners ("the waitstaff"), including Plaintiffs, although a dispute exists as to whether John Caravello or the Co-owners controlled that hiring.[12] The waitstaff sold and delivered alcohol to customers.[13] The alcohol served at the events included foreign-made brands such as Hennessy, D'ussé, and Cîroc.[14] The waitstaff were also told to post about the Super Bowl Events on social media.[15]

---

[10]Id.; Rogers Deposition, Exhibit 4 to Plaintiff's MSJ, Docket Entry No. 114-4, p.14.

[11]Super Bowl Event Advertisements, Exhibit 6-B to Plaintiff's Response, Docket Entry No. 117-8, pp. 3-6; Caravello Declaration, Exhibit 6 to Plaintiff's MSJ, Docket Entry No. 114-6, p. 3 ¶¶ 7-8.

[12]Declaration of Jonathan Reitzell ("Reitzell Declaration"), Exhibit 1 to Defendant's Response and Motion for Continuance, Docket Entry No. 119-1, p. 2 ¶ 2 ("John hired all of the young ladies."); Caravello Deposition, Exhibit 4 to Plaintiff's MSJ, Docket Entry No. 114-5, p. 8 ("The owners of the business [had final say on hiring].").

[13]Defendants' Amended Answers to Plaintiff's First Set of Interrogatories to Defendants ("Defendants' Interrogatory Answers"), Exhibit 2 to Plaintiff's Response, Docket Entry No. 117-2, p. 16 Interrogatory 15; Caravello Declaration, Exhibit 6 to Plaintiff's MSJ, Docket Entry No. 144-6, p. 3 ¶¶ 6, 8.

[14]Super Bowl Liquor Menu, Exhibit 6-A to Plaintiff's MSJ, Docket Entry No. 114-7, pp. 2-3; Super Bowl Event Advertisements, Exhibit 6-B to Plaintiff's Response, Docket Entry No. 117-8, pp. 3-6.

[15]Dunphy Declaration, Exhibit 8 to Plaintiffs' Response, Docket Entry No. 117-10, p. 3 ¶ 6; Declaration of Erin Carantza ("Carantza
(continued...)

The waitstaff's pay was "$2.13 per hour worked plus tips."[16] The tips included all credit card and cash tips earned, plus a flat rate for gratuities on party packages.[17] According to Plaintiffs, they collected "thousands of dollars in cash tips alone" during the events.[18] But the waitstaff were required to turn in tips earned each night so that they could be pooled.[19] Mercy's Employee Handbook and deposition testimony state that five percent of waitstaff tips should have been tipped out to the service bartender and sweeper staff, and the remainder should have been divided between the waitstaff who worked that shift and paid back to them as part of their paychecks.[20] The hired waitstaff worked seven to eight hours each night of the Super Bowl Events, and some worked additional hours on February 4, 2017.[21]

---

[15](...continued) Declaration"), Exhibit 10 to Plaintiffs' Response, Docket Entry No. 117-12, p. 3 ¶ 6.

[16]Defendants' Interrogatory Answers, Exhibit 2 to Plaintiff's Response, Docket Entry No. 117-2, p. 16 Interrogatory 16.

[17]Oral Deposition of Mojeed Martins ("Martins Deposition"), Exhibit 11 to Plaintiff's Response, Docket Entry No. 117-13, p. 8.

[18]Declaration of Serah Dunphy in Support of Response to Motion for Summary Judgment ("Dunphy Declaration"), Exhibit 8 to Plaintiffs' Response, Docket Entry No. 117-10, p. 3 ¶ 8.

[19]Dunphy Declaration, Exhibit 8 to Plaintiffs' Response, Docket Entry No. 117-10, p. 3 ¶¶ 5, 8.

[20]Mercy Nightclub Employee Handbook, Exhibit 7 to Plaintiffs' MSJ, Docket Entry No. 114-9, p. 14; Dunphy Declaration, Exhibit 8 to Plaintiffs' Response, Docket Entry No. 117-10, p. 3 ¶ 5.

[21]Dunphy Declaration, Exhibit 8 to Plaintiffs' Response, Docket Entry No. 117-10, p. 3 ¶ 7.

On February 17, 2017, Steven Rogers, a Co-owner of Mercy, paid the Super Bowl event waitstaff with personal checks in his own name.[22] According to uncontradicted statements from Plaintiffs and John Caravello, the amount paid did not account for the full amount of tips and wages the waitstaff earned during the Super Bowl weekend events.[23]

Plaintiffs filed this action on April 19, 2017, seeking the alleged unpaid minimum wages and tips for herself and others similarly situated under the FLSA.[24] Defendants filed their answer on March 23, 2018.[25] Plaintiffs' most recent amended complaint was filed on June 4, 2019.[26] Discovery has concluded and on August 9, 2019, the court set the case for trial on September 23, 2019, and later rescheduled the trial for December 2, 2019.[27] With the leave

---

[22]Id. at 3 ¶ 10; Carantza Declaration, Exhibit 10 to Plaintiffs' Response, Docket Entry No. 117-12, p. 3 ¶ 10; Steven Rogers Checks, Exhibit 12 to Plaintiffs' Response, Docket Entry No. 117-14, pp. 2-3.

[23]Caravello Deposition, Exhibit 5 to Plaintiffs' Response, Docket Entry No. 117-5, p. 4; Serah Dunphy Declaration, Exhibit 8 to Plaintiffs' Response, Docket Entry No. 117-10, p. 3 ¶ 8; Carantza Declaration, Exhibit 10 to Plaintiffs' Response, Docket Entry No. 117-12, p. 3 ¶ 9.

[24]Plaintiff's Original Collective Action Complain, Docket Entry No. 1, pp. 1, 9 ¶ 8.3.

[25]Defendants' Affirmative and Other Defenses and Answer to Plaintiffs' First Amended Collective Action Complaint, Docket Entry No. 32.

[26]Second Amended Complaint, Docket Entry No. 85.

[27]Minute Entry Order, Docket Entry No. 107 (setting the trial for September 23, 2019); Order Granting Plaintiffs' Unopposed Motion for Continuance of Trial, Docket Entry No. 110 (resetting the trial for December 2, 2019).

of the court, Defendants filed their motion for summary judgment on September 11, 2019, contending that there is no evidence that would establish that the FLSA applies.[28]  Plaintiffs filed their motion for summary judgment on September 27, 2019, seeking judgment on all elements of their FLSA claim except damages.[29]  Plaintiffs filed their response on October 2, 2019.[30]  On October 14, 2019, Defendants filed a motion for leave to amend their answer.[31]  On October 18, 2019, Defendants filed a response and a motion asking the court to continue its consideration of the motions for summary judgment until it decides the motion to amend.[32]  Defendants filed a supplemental motion to their response on October 21, 2019.[33]  On October 25, 2019, Plaintiffs filed their reply and also a motion to strike one of Defendant's response briefs and two of Defendant's exhibits.[34]  On November 4, 2019, Plaintiffs filed a response brief opposing Defendants' motion for leave to amend.[35]

---

[28]Defendant's MSJ, Docket Entry No. 112.

[29]Plaintiffs' MSJ, Docket Entry No. 114.

[30]Plaintiffs' Response, Docket Entry No. 117.

[31]Defendants' Motion to Amend, Docket Entry No. 118.

[32]Defendants' Response and Motion for Continuance, Docket Entry No. 119.

[33]Defendants' Supplemental Motion for Continuance and Response, Docket Entry No. 120.

[34]Plaintiffs' Reply in Support of Plaintiffs' MSJ, Docket Entry No. 123; Plaintiffs' Motion to Strike, Docket Entry No. 122.

[35]Plaintiffs' Response to Defendants' Motion for Leave to File an Answer to Plaintiffs' Second Amended Complaint, Docket Entry No. 124.

## II. **Motion to Strike and Admissibility of Exhibits**

The court must first resolve Plaintiffs' Motion to Strike Defendants' Supplemental Response and two of Defendants' exhibits. Defendants filed their response to Plaintiffs' MSJ on its due date, twenty-one days after Plaintiff filed her motion.[36]  Three days later, Defendants filed their supplemental response.[37]  Plaintiffs argue that the supplemental response should be stricken because it was filed late without leave of the court.[38]  However, the court has a strong policy of resolving issues on the merits rather than on procedural technicalities. Oramulu v. Washington Mutual Bank, C.A. No. H-08-00277, 2009 WL 7838118, at *2 (S.D. Tex. June 12, 2009). Accordingly, the Motion to Strike Defendants' Supplemental Response will be denied.

Plaintiffs also move to strike Exhibits 3 and 4 to Defendant's Response.[39]  Exhibit 3 appears to be an unsigned contract drafted by John Caravello that would have granted him greater scope of authority as manager of Mercy Nightclub.[40]  Exhibit 4 appears to be a text message conversation dated January 3, 2017, between several women and the Mercy managers, where John Caravello, called "boss"

---

[36]Defendants' Supplemental Motion for Continuance and Response, Docket Entry No. 120.

[37]Id.

[38]Plaintiffs' Motion to Strike, Docket Entry No. 122, p. 2.

[39]Id. at 3-5.

[40]Caravello Contract, Exhibit 3 to Defendants' Response and Motion for Continuance, Docket Entry No. 119-3, pp. 2-6.

in the conversation, informs the women that they can come pick up their tips.[41] To authenticate these documents, Defendants provide a declaration by Jonathan Reitzel that he has personal knowledge of the exhibit.[42] Testimony by a knowledgeable witness may suffice to support a finding that an item is what it purports to be and thus sufficiently authenticated for admission into evidence. Fed. R. Civ. P. 901(b)(1); <u>Thompson v. Bank of America National Association</u>, 783 F.3d 1022, 1027 (5th Cir. 2015). At the summary judgment stage, Reitzel's statement that the exhibits are what they purport to be satisfies the low burden for authentication.

Plaintiffs also argue that the exhibits should be stricken because the contract bears no signatures and the text message does not show John Caravello was in fact Plaintiffs' boss.[43] These arguments relate to whether the exhibits show a genuine issue of material fact rather than whether they are admissible. Accordingly, the court will deny Plaintiffs' Motion to Strike the exhibits. The court will consider both Defendants' Supplemental Response and all of Defendants' exhibits in deciding the pending motions.

In their Supplemental Response, Defendants argue that the court should disregard the Caravello Declaration (Docket Entry

---

[41]Text Message, Exhibit 4 to Defendants' Response and Motion for Continuance, Docket Entry No. 119-4.

[42]Declaration of Jonathan Reitzel, Exhibit 1 to Defendants' Response and Motion for Continuance, Docket Entry No. 119-1, p. 1.

[43]Plaintiffs' Motion to Strike, Docket Entry No. 122, p. 4.

No. 114-6) as a sham declaration.[44] A sham declaration is one that contradicts the declarant's prior deposition testimony to raise a fact issue. Doe ex rel. Doe v. Dallas Independent School District, 220 F.3d 380, 386 (5th Cir. 2000). Defendants do not point to any prior deposition testimony that the declaration contradicts, and the court concludes the sham affidavit rule does not apply.

### III.  Summary Judgment Standard of Review

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553). "If the moving party fails to meet

---

[44]Defendants' Supplemental Motion for Continuance and Response, Docket Entry No. 120.

this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). The court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

IV.  **FLSA Commerce Requirement**

Plaintiffs assert a claim against defendants for unpaid minimum wages and tips under the FLSA.[45] See 29 U.S.C. § 216(b). The FLSA's wage and tip provisions apply only to employees "engaged in commerce or in the production of goods for commerce" or

---

[45]Second Amended Complaint, Docket Entry No. 85, p. 8.

"employed in an enterprise engaged in commerce or in the production of goods for commerce." <u>Id.</u> § 206(a). Defendants' MSJ contends that no evidence supports that Plaintiffs were engaged in commerce or employed by an enterprise engaged in commerce and so the FLSA does not cover Plaintiffs.[46] Plaintiffs argue that Defendants are bound by their pleadings, which admit to being an enterprise engaged in interstate commerce, and that the evidence presents a genuine issue of material fact on the issue.[47] Defendants request leave to amend their answer to remove the admission that they are an enterprise engaged in commerce.[48]

## A. Judicial Admission and Motion for Leave to Amend

Facts admitted in the pleadings "are considered to be judicial admissions conclusively binding on the party who made them." <u>White v. ARCO/Polymers, Inc.</u>, 720 F.2d 1391, 1396 (5th Cir. 1983). Once admitted, the facts are considered "no longer at issue." <u>Davis v. A.G. Edwards and Sons, Inc.</u>, 823 F.2d 105, 108 (5th Cir. 1987). When Defendants pled an admission that they "were an enterprise engages [sic] in commerce or in the production of goods for

---

[46]Defendants' MSJ, Docket Entry No. 112, pp. 4-5 ¶¶ 14-16.

[47]Plaintiffs' Response, Docket Entry No. 117, pp. 11-12.

[48]Defendants' Motion to Amend, Docket Entry No. 118; <u>compare</u> Defendants' Answer to Plaintiff's Second Amended Collective Action Complaint, Exhibit A to Defendants' Motion to Amend, Docket Entry No. 118-1, p. 5 ¶ 5.2 <u>with</u> Defendants Affirmative and Other Defenses and Answer to Plaintiffs' First Amended Collective Action Complaint [sic] ("Defendants' Answer"), Docket Entry No. 32, p. 4 ¶ 5.2.

commerce within the meaning of the FLSA,"[49] they bound themselves to that statement and agreed that the FLSA's commerce requirement was not a contested issue in this case. Defendants may not rely on an argument at summary judgment that controverts their prior judicial admission. Bowman v. CitiMortgage, Inc., 768 F. App'x 220, 224 (5th Cir. 2019).

Defendants do not contest that their pleading admits that the FLSA's commerce requirement is met. Instead, they move for leave to amend their pleading to remove that admission.[50] Leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15a(a). But leave to amend is not automatic and "the decision to grant or deny leave to amend lies within the sound discretion of the district court." Little v. Liquid Air Corp., 952 F.2d 841, 845-46 (5th Cir. 1992). Factors the court may consider in exercising that discretion include undue delay, bad faith or dilatory motives, repeated failures to cure deficiencies when previously allowed, and undue prejudice to the opposing party. Id. Motions to amend the pleadings made after the conclusion of discovery and on the eve of trial, as here, are especially disfavored. Id.; Daves v. Payless Cashways, Inc., 661 F.2d 1022, 1025 (5th Cir. 1981).

---

[49]Defendants' Answer, Docket Entry No. 32, p. 4 ¶ 5.2 (admitting to the allegation in Plaintiffs' Original Collective Action Complaint ("Original Complaint"), Docket Entry No. 1, p. 5 ¶ 5.2).

[50]Defendants' Motion to Amend, Docket Entry No. 118, p. 1.

Defendants' motion was submitted thirty months after Plaintiff filed her Original Complaint and nineteen months after Defendants' Answer.[51] Defendants argue that their amended answer is responsive to Plaintiffs' Second Amended Complaint, filed on June 4, 2019, but that amendment did not change or add to the allegation of FLSA commerce in paragraph 5.2.[52] The allegation has been part of Plaintiffs' claims since the outset of this action. Because Defendants have had ample opportunity to amend their answer and retract their judicial admission, denial of their late motion to amend is appropriate. See id. (holding that a delay of over a year in requesting leave to amend justified denial of leave to amend). Accordingly, Defendants' Motion to Amend will be denied, and Defendants are bound by their admission that the FLSA commerce requirement is satisfied. Defendants' Supplemental Motion for Continuance requesting that the court delay ruling on Plaintiffs' MSJ until after allowing Defendants' Motion to Amend will be denied as moot.

## B.    FLSA Coverage Merits

Even if Defendants were not bound by their admission, to prevail on their own summary judgment motion Defendants must

---

[51]Id. (filed October 14, 2019); Original Complaint, Docket Entry No. 1 (filed April 19, 2017); Defendants' Answer, Docket Entry No. 32 (filed March 23, 2018).

[52]Original Complaint, Docket Entry No. 1, p. 5 ¶ 5.2; Plaintiffs' First Amended Collective Action Complaint ("First Amended Complaint"), Docket Entry No. 16, p. 5 ¶ 5.2; Plaintiffs' Second Amended Complaint, Docket Entry No. 85, p. 5 ¶ 5.2.

establish that there is no evidence that would create a genuine issue of material fact as to FLSA coverage. <u>Little</u>, 37 F.3d at 1075. If Plaintiffs meet their summary judgment burden by showing there is evidence that supports FLSA coverage as a matter of law, Defendants must cite evidence that would show a material disputed fact. <u>Id.</u>

An unpaid-wages claimant may satisfy the FLSA's commerce requirement by showing that the employee-Plaintiffs engaged "in commerce or in the production of goods for commerce" ("individual coverage"), or that the employer-defendant is "an enterprise engaged in commerce or the production of goods for commerce" ("enterprise coverage"). 29 U.S.C. § 206(a); <u>Martin v. Bedell</u>, 955 F.2d 1029, 1032 (5th Cir. 1992). The statute defines "commerce" to mean "trade, commerce, transportation, transmission, or communication among the several States." 29 U.S.C. § 203(b). The statute also defines "enterprise engaged in commerce or in the production of goods for commerce" as one that:

> (i)   has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> (ii)  is an enterprise whose gross volume of sales made or business done is not less than $500,000.

<u>Id.</u> § 203(s)(1)(A)(i)(ii). Individual coverage is narrow, and only applies to employees whose work directly and substantially involves interstate commerce. <u>Mendoza v. Detail Solutions, LLC</u>, 911

F. Supp. 2d 433, 440 (N.D. Tex. 2012). Enterprise coverage, however, is broadly defined; it applies not only when an enterprise has employees directly engaged in commerce, but also where employees handle, sell, or otherwise work on goods that have been moved in or produced for interstate commerce. 29 U.S.C. § 203(b); see Landeros v. Fu King, Inc., 12 F. Supp. 3d 1020, 1023-24 (S.D. Tex. 2014) (discussing the expansive nature of FLSA enterprise coverage).

### 1. Enterprise Coverage

FLSA enterprise coverage has two elements: (1) that the employer's employees engaged in qualifying activity, and (2) that the employer's gross sales exceed $500,000 annually. 29 U.S.C. § 203(s)(1)(A). The first element can be satisfied if goods handled or sold by the enterprise's employees moved across state lines at some time in the flow of commerce. Id. § 203(s)(1)(A)(i); Brennan v. Greene's Propane Gas Service, Inc., 479 F.2d 1027, 1030-31 (5th Cir. 1973); Landeros, 12 F. Supp. 3d at 1023-24. It is not disputed that the record establishes that John Caravello and the waitstaff, employees of Mercy, ordered, handled, or sold well-known brands of liquor such as Hennessy, D'ussé, and Cîroc on behalf of the nightclub.[53] Plaintiffs have not, however, pointed

---

[53]Super Bowl Liquor Menu, Exhibit 6-A to Plaintiffs' MSJ, Docket Entry No. 114-7, pp. 2-3; Super Bowl Event Advertisements, Exhibit 6-B to Plaintiffs' Response, Docket Entry No. 117-8, pp. 3-6.

to any evidence that this liquor traveled across state lines. Instead, Plaintiffs argue that the court may infer the liquor must have traveled in interstate commerce because they are not manufactured in Texas.[54] Plaintiffs therefore appear to argue that the court take judicial notice that these liquors are not produced in Texas, which would require that this fact is "(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The court concludes it may take judicial notice of the origin of famous foreign-made liquors such as Hennessy, D'ussé, and Cîroc, and thus any stocked and sold by Mercy must have traveled in interstate commerce. Accordingly, the first element of § 203(s)(1)(A) is satisfied as a matter of law because there is no genuine issue of material fact as to whether Mercy's employees handled and sold foreign-made liquors that had traveled in interstate commerce.

The second element of § 203(s)(1)(A) requires that the enterprise's "gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i). Plaintiffs argue that this element is satisfied by John Caravello's statements that Mercy grossed approximately $400,000 over the course of the 2017 Super Bowl weekend events alone, and that the nightly closeout reports for Super Bowl weekend indicated sales of at least

---

[54]Plaintiffs' MSJ, Docket Entry No. 114, p. 12.

$125,161.[55] Defendants' briefing does not address the gross sales issue at all or raise it as a basis for their summary judgment motion. It is Plaintiffs' burden, however, to demonstrate entitlement to summary judgment on the issue. <u>Little</u>, 37 F.3d at 1075.

Plaintiffs argue that the $400,000 figure conclusively shows the statutory threshold is met because under the "rolling quarter" method of computation, a quarterly income over $125,000 establishes annual income of $500,000.[56] This, however, is not a fair statement of the rolling quarter computation method promulgated by the Secretary of Labor and approved by the Fifth Circuit. <u>See Donovan v. I-20 Motels, Inc.</u>, 664 F.2d 957, 958 (5th Cir. 1981). Under that guidance, most businesses should determine FLSA coverage "at the beginning of each quarter . . . by calculating [the] annual dollar volume based on the sum of the four preceding quarters." <u>Donovan</u>, 664 F.2d at 958. Multiplying a single quarter of sales to estimate an annual figure is only appropriate for a new business that has only been in operation for a single quarter. <u>Landeros</u>, 12 F. Supp. 3d at 1026 (citing 29 C.F.R. § 779.259). Neither the parties nor the record suggests Mercy was a new business in the first quarter of 2017, and there is no evidence in the record of

---

[55]Plaintiffs' MSJ, Docket Entry No. 114, pp. 14-15; <u>see</u> Caravello Deposition, Exhibit 5 to Plaintiffs' MSJ, Docket Entry No. 114-5, p. 14; Caravello Declaration, Exhibit 6 to Plaintiffs' MSJ, Docket Entry No. 114-6, p. 3 ¶ 9; Closeout Records, Exhibit 3 to Plaintiffs' MSJ, Docket Entry No. 114-3, pp. 1-13.

[56]Plaintiffs' MSJ, Docket Entry No. 114, p. 14.

Mercy's sales in any quarters before or after the 2017 Super Bowl events.

In the absence of other evidence, the close-out records and Caravello's statement might support an inference that Mercy did $500,000 in gross sales annually that year, but the court cannot draw such an inference against Defendants in considering Plaintiffs' MSJ. See Reeves, 120 S. Ct. 2097, 2110 (2000) ("[T]he court must draw all reasonable inferences in favor of the nonmoving party."). Accordingly, Plaintiffs have not met their burden to show there is no genuine issue of material fact as to the second element of § 203(s)(1)(A). But neither have Defendants met their burden to show Plaintiffs have no evidence supporting the two elements of enterprise coverage. But for Defendants' admission, whether Mercy grossed at least $500,000 annually would be an issue for trial.

## 2. Individual Coverage

The parties also both argue that there is no genuine issue of material fact as whether Plaintiffs qualify for FLSA individual coverage. Plaintiffs contend that Mercy's waitstaff was "engaged in commerce" because their duties included serving liquor to out-of-state customers who were visiting Houston and advertising Mercy's events on the internet.[57] Defendants argue that these activities do not satisfy the statutory requirement because they

---

[57]Plaintiffs' Response, Docket Entry No. 117, p. 20.

either do not qualify as engagement with interstate commerce or because they were not a significant part of Plaintiffs' duties.[58]

An employee is considered personally engaged in interstate commerce when "the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." Sobrinio v. Medical Center Visitor's Lodge, Inc., 474 F.3d 828, 829 (5th Cir. 2007). "[A]ny regular contact with commerce, no matter how small, will result in coverage." Id. (quoting Marshall v. Victoria Transportation Co., Inc., 603 F.2d 1122, 1124 (5th Cir. 1979)). An employee who regularly uses an instrumentality of interstate commerce is engaged in commerce. Thorne v. All Restoration Services, Inc., 448 F.3d 1264, 1266 (11th Cir. 2006). It is well-settled that the internet is an instrumentality of interstate commerce. United States v. Barlow, 568 F.3d 215, 220 (5th Cir. 2009); see also Miller v. Centerfold Entertainment Club, Inc., No. 6:14-CV-6074, 2017 WL 3425887, at *3 (W.D. Ark. Aug. 9, 2017) (holding that employees who regularly use the internet as part of their job have FLSA individual coverage); Foster v. Gold & Silver Private Club, Inc., Civil Action No. 7:14CV00698, 2015 WL 8489998, at *6 (W.D. Va. Dec. 9, 2015) (same).

_____

[58]Defendants' Response and Motion for Continuance, Docket Entry No. 119, pp. 6-7.

The only evidence that Plaintiffs regularly used the internet while working for Mercy is a statement in Plaintiffs' declarations that the waitstaff were "told to put the 2017 Super Bowl events on our social media . . . to promote the events."[59] This does not suffice to establish Plaintiffs' job duties included a regular use of the internet. There is no evidence the waitstaff actually used the internet, much less with any regularity.

Plaintiffs cite no authority that would support that merely serving customers who are visiting from out-of-state qualifies as FLSA commerce. The Fifth Circuit has held otherwise. In <u>Sobrinio</u> a driver who provided local transportation to a motel's customers sued his employer under the FLSA. 474 F.3d at 829. The driver argued that he was engaged in commerce because he provided transportation to out-of-state guests, though he did not provide transportation to or from any interstate transportation points such as an airport. <u>Id.</u> The Fifth Circuit held that because the driver's activities occurred after the customers had completed their interstate travel and before they began their departure, they were local in character and not part of interstate commerce. <u>Id.</u> at 830. Like the driver in <u>Sobrinio</u>, Plaintiffs served out-of-state customers after they had completed their interstate journey to Texas and before they began their departure journeys. That some

_____

[59]Dunphy Declaration, Exhibit 8 to Plaintiffs' Response, Docket Entry No. 117-10, p. 3 ¶ 6; Carantza Declaration, Exhibit 10 to Plaintiffs' Response, Docket Entry No. 117-12, p. 3 ¶ 6.

customers were from out of state does not suffice to satisfy commerce or the FLSA's individual coverage. It is the Plaintiffs' burden to prove FLSA coverage. Id. at 829. Plaintiffs have pointed to no evidence or facts that would establish individual coverage.

## C. Summary Judgment Conclusions on FLSA Coverage

As explained above, the court concludes that the evidence shows that there would have been at least a genuine issue of material fact as to the second element of enterprise coverage, the $500,000 revenue threshold. Defendants, however, are bound by their admission that Mercy is an enterprise engaged in commerce under the definition of the FLSA and therefore are not permitted to argue otherwise at summary judgment or at trial. Bowman, 768 F. App'x at 224; Davis, 823 F.2d at 108. The court therefore considers enterprise coverage to have been conclusively established. There is, however, no basis in the record to support that Plaintiffs are eligible for individual coverage under the FLSA. Defendants' MSJ will be denied because FLSA coverage is the only issue it raised. Plaintiffs' MSJ will be granted as to the establishment of enterprise coverage.

## V. Employer-Employee Relationship

## A. The Co-Owners' Employer Status

"Any employer" who violates the FLSA's minimum-wage provisions are liable to their employees. 29 U.S.C. § 216(b). The statute

includes "any person acting directly or indirectly in the interest of an employer in relation to an employee" as an "employer." Id. § 203(d). This generally means both a corporate entity and officers who exert operational control over the entity may be considered "employers" and are jointly and severally liable for unpaid wages. Donovan v. Grim Hotel Co., 747 F.2d 966, 972 (5th Cir. 1984). Plaintiffs argue that uncontested evidence demonstrates that under the FLSA defendants Rogers, Martins, and Reitzell, the Co-owners of Mercy, are "employers" who may be liable to the waitstaff for unpaid wages.[60] Plaintiffs point to statements by John Caravello and Steven Rogers that Rogers, Martins, and Reitzell were involved in managing Mercy. Defendants argue that the Co-owners were not FLSA employers of the waitstaff because they did not directly hire or supervise them.[61] In particular, defendants argue that because John Caravello hired the waitstaff, supervised them, wrote the Employee Handbook, and was called "boss" by some of them, only he and not the Co-owners can be considered the FLSA employer of the waitstaff.[62]

Under the Fifth Circuit's economic reality test, factors to consider when determining if a person is an employer include "whether the alleged employer: '(1) possessed the power to hire

---

[60]Plaintiffs' MSJ, Docket Entry No. 114, pp. 16-17.

[61]Defendants' Response and Motion for Continuance, Docket Entry No. 119, pp. 3-4.

[62]Id. at 4-5.

and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" <u>Gray v. Powers</u>, 673 F.3d 352, 355 (5th Cir. 2012). The Plaintiffs need not establish each element to prove employer status. <u>Id.</u> at 357. The FLSA's remedial purpose requires a broader definition of "employer" than in the traditional common law. <u>McLaughlin v. Seafood, Inc.</u>, 867 F.2d 875, 877 (5th Cir. 1989). The definition includes an individual who "dominates [a corporation's] administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees." <u>Reich v. Circle C. Investments, Inc.</u>, 998 F.2d 324, 329 (5th Cir. 1993). An owner of a business who does not manage employees on a day-to-day basis but nonetheless oversees the business's activities and has the power to hire and fire employees, including managers, may be an "employer" under the FLSA. <u>Reich v. Priba Corp.</u>, 890 F. Supp. 586, 591 (N.D. Tex. 1995).

Uncontradicted deposition testimony establishes that the Co-owners had and exercised the power to hire managers, would coach them to improve performance, and consult with them on promotions and events.[63] John Caravello states without contradiction that all three of the Co-owners were responsible for paying the waitstaff

---

[63]Rogers Deposition, Exhibit 4 to Plaintiffs' MSJ, Docket Entry No. 114-4, pp. 9-12; Caravello Deposition, Exhibit 5 to Plaintiffs' MSJ, Docket Entry No. 114-5, pp. 11-12; Martins Deposition, Exhibit 11 to Plaintiffs' MSJ, Docket Entry No. 114-13, pp. 5-6.

and exercised control over operations of the club.[64] The record also contains checks signed by Steven Rogers made out to members of the waitstaff, including Plaintiff.[65] These facts suffice to establish that the Co-owners were FLSA employers because they acted or had the power to act directly or indirectly in the interest of Mercy in relation to an employee. See 29 U.S.C. § 302(d). Because Plaintiffs have accordingly met their burden under Rule 56(c) to show there is an absence of a genuine issue of material fact as to whether the Co-owners are FLSA employers, the burden shifts to Defendants to point to evidence in the record that would show a genuine issue of material fact. See Little, 37 F.3d at 1071.

Defendants argue that the Co-owners were not employers of the waitstaff because John Caravello exerted exclusive and complete control over the waitstaff. Defendants cite no authority to support that an individual can prove he was not an employer by demonstrating that another individual was also an employer. Defendants also cite no authority to support that their employer-like actions in closely supervising John Caravello are irrelevant to whether they were employers of other Mercy employees. The text of the statute assigns employer status to any person who acts on behalf of the legal employer (here, Mercy) in relation to "an

[64]Caravello Deposition, Exhibit 5 to Plaintiffs' MSJ, Docket Entry No. 114-5, pp. 5-6, 16.

[65]Rogers Checks, Exhibit 12 to Plaintiffs' MSJ, Docket Entry No. 114-14, pp. 2-3.

employee." 29 U.S.C. § 216(b). The statute does not require the person to act in relation to specifically the employee who brings suit under the FLSA.

Defendants cite <u>Gray</u>, 673 F.3d at 352, to argue there is insufficient evidence here to consider the Co-owners employers. In that case, a bartender sued the owner of a club as a purported employer, but no evidence showed the owner had exerted operational control over the club beyond participating in corporate-level decisions as a shareholder. <u>Id.</u> at 355–356. The Fifth Circuit distinguished cases where shareholders exercised real authority in the business's operations and concluded there was no evidence that the owner was even an employer with regard to the club's manager. <u>Id.</u> at 356. <u>Gray</u> is therefore distinguishable from this case, where there is not only evidence that the Co-owners supervised Mercy's managers on a regular basis but also that the Co-owners directly controlled the waitstaff's pay. This evidence is competent to show that the Co-owners were employers, and it is the Defendants' burden to point to evidence that shows a genuine conflict with it.

Defendants cite four points of evidence that they argue create a fact issue. First, the Defendants cite an unsigned contract apparently written by John Caravello in which he requests, among other things: (1) Complete control over operations and for the Co-owners to stop interacting with and instructing Mercy's staff, (2) complete control over staffing, and (3) that the Co-owners

reliably pay the staff.[66] The contract is not signed and there is no evidence it was ever agreed to by the Co-owners.[67] Because the contract is not signed, at most it shows that there were disputes between Caravello and the Co-owners about how to run Mercy. Because the contract alludes to disputes regarding the Co-owners being too involved with the staff and failing to reliably pay the staff on time and does not show those disputes were ever resolved, the contract does not contradict the facts discussed above that support the Co-owners' employer status.

Second, Defendants submit a Declaration from Jonathan Reitzell that states John Caravello had complete control over the waitstaff and that the Co-owners "did not hire, fire, control or supervise" them.[68] Third, Defendants point to the evidence that Caravello wrote the Employee Handbook and prepared the nightly close-out reports.[69] Fourth, Defendants provide a text message conversation where Caravello appears to be referred to as the waitstaff's "boss."[70] As explained above, this evidence does not contravene the critical facts explained above that the Co-owners supervised

---

[66]Unsigned Contract, Exhibit 3 to Defendants' Response and Motion for Continuance, Docket Entry No. 119-3, pp. 2-4.

[67]Id. at 6.

[68]Reitzel Declaration, Exhibit 1 to Defendants' Response and Motion for Continuance, Docket Entry No. 119-1, p. 2 ¶ 2.

[69]Id. 2-3 ¶ 2.

[70]Text Message, Exhibit 4 to Defendants' Response and Motion for Continuance, Docket Entry No. 119-4, p.2.

Caravello and controlled the waitstaff's pay. Proof that Caravello was the waitstaff's primary manager or "boss" does not create a fact issue as to whether the Co-owners exercised operational control over the club and waitstaff.

The Co-owners did not have to control every aspect of the employee-employer relationship for employer status to be established. Gray, 673 F.3d at 357. Because the evidence cited by Defendants only shows that the Co-owners did not control every aspect of the employment relationship and does not contravene the key evidence Plaintiffs cite that they exerted at least some significant control, Defendants have not shown there is a genuine issue for trial as to whether the Co-owners were employers under the FLSA. See Little, 37 F.3d at 1075. Accordingly, Plaintiffs' MSJ will be granted as to this issue.

## B. Employee Status

Plaintiffs' MSJ also argues that there is no genuine issue of material fact as to whether they were employees under the FLSA.[71] The FLSA defines "employee" as simply "an individual employed by an employer." 29 U.S.C. § 203(e)(1). Uncontroverted deposition and declaration evidence establishes that Plaintiffs received training, uniform and scheduling instructions, and payment for serving as waitstaff for Mercy Nightclub.[72] Plaintiffs also filled out an

---

[71]Plaintiffs' MSJ, Docket Entry No. 114, p. 18.

[72]Dunphy Declaration, Exhibit to Plaintiffs' MSJ, Docket Entry No. 114-10, pp. 1-2; Carantza Declaration, Exhibit to Plaintiffs' MSJ, Docket Entry No. 114-12, pp. 1-2.

employment application and W-4 tax form for Mercy.[73]  Defendants

have not contested these facts, and the court concludes there is no

genuine issue of material fact as to Plaintiffs' employee status.

## VI.  <u>Minimum Wage and Tip Violations</u>

After the commerce requirement and the establishment of the

employer-employee relationship, the final element of an FLSA

minimum wage claim is that the employer failed to pay the

Plaintiffs the minimum wage required by statute.  29 U.S.C. §§ 206,

216(b).  The FLSA allows employees to recover any tips received

that the employer kept.  <u>Id.</u> §§ 203(m)(2)(B), 216(b).  Plaintiffs

argue that there is no genuine issue of material fact as to whether

Defendants failed to pay the required minimum wage and unlawfully

kept tips, and requests summary judgment on liability and referral

of the action to the Magistrate Judge for a trial or mediation on

damages only.[74]  But in an unpaid wages case, liability and damages

turn on the same set of facts:  the hours worked by the employee

and the wages the employer paid, if any.  Likewise, Plaintiffs'

claim for unlawfully kept tips turns on whether their ultimate pay

did not reflect the hours worked and tips received.  While a

plaintiff need not prove the precise extent of uncompensated work

when the employer failed to keep adequate employment records, the

---

[73]Caravello Deposition, Exhibit 5 to Plaintiffs' MSJ, Docket
Entry No. 114-5, p. 9

[74]Plaintiffs' MSJ, Docket Entry No. 114, pp. 24-25

employee must still "produce[] sufficient evidence to show the amount and extent of [] work as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 66 S. Ct. 1187, 1192 (1946), superseded by statute on other grounds, Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84, as recognized in Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. 513, 519 (2014). Because Plaintiffs point to no evidence in the record that approximates the wages and tips owed and admits these facts need further development, they are not entitled to summary judgment on liability.

Plaintiffs also argue that there is no factual dispute that the FLSA's tip credit allowance for tipped employees does not apply in this case. The FLSA tip credit allows employers to pay a reduced minimum wage to tipped employees so long as the tips received meet or exceed the reduction. 29 U.S.C. § 203(m)(2)(A). To qualify for the tip credit, however, (1) employers must inform employees of the provisions of § 203(m), and (2) employees must retain all tips received, with the exception that tip pooling is permitted among employees who customarily and regularly receive tips. Id. The tip credit is best characterized as an affirmative defense to a minimum wage claim, and it is the employer's burden to prove the tip credit applies. Barcellona v. Tiffany English Pub, Inc., 597 F.2d 464, 467 (5th Cir. 1979); see also Pedigo v. Austin Rumbo, Inc., 722. F. Supp. 2d 714, 723-24 (W.D. Tex. 2010)

(collecting and analyzing cases). Defendants' briefing does not respond to Plaintiffs' argument and points to no evidence that would show Plaintiffs were informed of § 203(m) or were permitted to retain their tips. Accordingly, summary judgment that the tip credit defense does not apply and that the waitstaff was entitled to a full minimum wage is warranted. Plaintiffs still bear the burden to prove at trial that their ultimate pay did not reflect hours worked and tips received.

## VII.  Conclusion and Order

For the reasons explained above, Plaintiffs' Motion for Summary Judgment (Docket Entry No. 114) is therefore **GRANTED IN PART and DENIED IN PART**. Plaintiffs' motion is granted as to FLSA coverage, her employee status, the employer status of the Co-owner defendants, and the applicability of the FLSA tip-credit. Plaintiffs' motion is denied as to liability. Plaintiffs' Motion to Strike Defendants' Supplemental Response to Plaintiffs' Motion for Summary Judgment [Dkt. 120] and Defendants' Exhibits 3 and 4 [Dkts. 119-3, 119-4] to Defendants' Response to Plaintiffs' Motion for Summary Judgment (Docket Entry No. 122) is **DENIED**. Defendants' Rule 56 Motion for Partial Summary Judgment (Docket Entry No. 112) is **DENIED**. Defendants' Motion for Leave to File Amended Pleading (Docket Entry No. 118) is **DENIED**. Defendants' Supplemental Motion for Continuance and Response to Plaintiffs' Motion for Summary

Judgment (Docket Entry No. 120) is **DENIED AS MOOT**.  This action is **REFERRED** to United States Magistrate Judge Nancy K. Johnson for a settlement conference.

SIGNED at Houston, Texas, on this 15th day of November, 2019.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE
